UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
    THERESA TACKIE,

                      Plaintiff,

                                   14-CV-2074 (JPO)
                -v-

                                 OPINION AND ORDER

    KEFF ENTERPRISES LLC;
    KEFF NYC, INC.;
    LEONARD KEFF;
    RICKY SCHIFFER,
                      Defendants.
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

       Plaintiff Theresa Tackie alleges that Defendants failed to pay her minimum and overtime wages for over a year of work, violating both the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL). Tackie has served all Defendants except Ricky Schiffer[1]; Defendants have not answered the complaint or otherwise appeared in this action. Tackie now moves for default judgment in the amount of $54,044.61, plus 9% prejudgment interest on $13,205.00 worth of back pay. For the reasons that follow, her motion is granted in part.

**I.    Background**

       Tackie alleges that she worked as a seamstress in Defendants' knitting factory between December 3, 2012 and December 11, 2013. The knitting factory was under the common control of each of the Defendants, including Keff Enterprises LLC and Keff NYC, Inc. Leonard Keff actively managed the factory and had the authority to hire and fire workers. During the year that Tackie worked for the knitting factory, the factory produced garments and had annual gross revenues of more than $500,000.

---

[1] References to "Defendants" in the remainder of this opinion are references to only Keff Enterprises LLC, Keff NYC, Inc., and Leonard Keff.

Tackie was hired to work for twenty dollars an hour.  Tackie occasionally worked 52-hour workweeks, but she was generally scheduled to work from 9:00 a.m. to 5:30 p.m., with a half-hour lunch break, Monday through Friday.   Defendants did not post minimum or overtime wage notices in the factory, and they did not pay Tackie for the majority of hours that she worked.  Although Defendants did not keep any records of the hours Tackie worked or the wages she received, Tackie kept records indicating that she worked 1,182.25 hours and she was paid for only 449.  Defendants frequently failed to pay her on her regular payment date, and they never paid her overtime wages for weeks in which she worked more than 40 hours.

## II.     Discussion

### A.     Standard of Review

Because Defendants have failed to answer the complaint, they have conceded Tackie's well-pleaded allegations of liability.  Fed. R. Civ. P. 8(b)(6); *S.E.C. v. Razmilovic*, 738 F.3d 14, 19 (2d Cir. 2013).  But because a party in default does not admit conclusions of law, the Court must determine whether those allegations establish a sound legal basis for liability.  *Jemine v. Dennis*, 901 F. Supp. 2d 365, 373 (E.D.N.Y. 2012) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).  Moreover, to secure a default judgment for damages, the plaintiff must produce evidence sufficient to establish her damages with "reasonable certainty."  *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 235 (2d Cir. 2012) [hereinafter *Cement & Concrete Workers*] (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  District courts have "much discretion" to determine whether to hold an inquest on damages; an inquest is not mandatory, and a plaintiff's damages may be established by "detailed affidavits and documentary evidence."  *Id.* at 234 (quoting *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993)).

B.     **Allegations in Support of Liability**

To state a FLSA minimum wage claim, a plaintiff must allege that she was the defendant's employee, that her work involved interstate activity, and that she worked hours for which she did not receive minimum and/or overtime wages. *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007); *see also Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) ("[T]o survive a motion to dismiss [a FLSA overtime claim], Plaintiffs must allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours.").[2]

First, to determine whether a plaintiff is an employee for FLSA purposes, courts examine the "economic reality" of a working relationship. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104–05 (2d Cir. 2013) (citing *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 134 (2d Cir. 2008)). The inquiry is a totality-of-the-circumstances approach, so no one factor is dispositive, but courts consider at least "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1988) (citations omitted). Courts are also permitted to consider any other factor relevant to the economic reality of the working relationship. *Id.* at 1059 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). "The ultimate concern is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." *Id.* at 1059 (citing *Donovan v. Tehco, Inc.*, 642 F.2d 141, 143

---

[2] Courts apply the same analysis for FLSA and NYLL wage and hour violations, except that the NYLL does not require plaintiffs to show a nexus with interstate commerce or a minimum amount of annual sales. *Alvarez v. Michael Anthony George Const. Corp.*, __ F. Supp. 2d __, 2014 WL 1679063, *4 (E.D.N.Y. 2014) (citing *Chun Jie Yin v. Kim*, 2008 WL 906376, *4 (E.D.N.Y. Apr. 1, 2008)).

(5th Cir. 1981)). With regard to covered employers, FLSA does not define the "employers" to whom it applies. *Irizarry*, 722 F.3d at 103–04 (citing *Rutherford Food Corp.*, 331 U.S. at 728). FLSA's definition of "employ," which "includes to suffer or permit to work," is so broad that courts read "employer" to mean something broader than a master under traditional agency law principles. *See id.* at 103. As is the case with the definition of "employee," courts consider the economic reality of a working relationship to determine whether an individual qualifies as an "employer." *Id.* at 104 (citing *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984)). The Second Circuit has established four factors that determine whether an individual is an employer: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (quoting *Carter*, 735 F.2d at 12).

Tackie's allegations are sufficient to state a plausible claim that her employment relationship with Defendants was covered by FLSA. Defendants exercised a fair degree of control over Tackie: they set a specific work schedules for her, generally from 9:00 a.m. to 5:30 p.m., five days a week. Leonard Keff determined how much Tackie would be paid per hour and had the authority to hire and fire her. There is no indication that Tackie had any investment in the knitting factory or opportunity for profit outside her hourly wage. And there is no allegation that Tackie's work required any special skill. Tackie was not hired to complete a discrete project; rather, she was a permanent employee who worked on a weekly basis for a year. Finally, a seamstress's work is integral to the operation of a knitting factory. In light of all of these factors, Tackie has stated a plausible claim that her relationship with Defendants was an employment relationship covered by FLSA.

Second, an employee is covered by FLSA if she is "employed in an enterprise engaged in . . . the production of goods for commerce." 29 U.S.C. §§ 206, 207(a)(1). "Commerce" is

defined as "commerce . . . between any State and any place outside thereof." 29 U.S.C. § 203(b). Tackie has alleged that the knitting factory produced garments, which are goods produced in commerce for purposes of FLSA. *Yu Y. Ho v. Sim Enters., Inc.*, 2014 WL 1998237, *10 (S.D.N.Y. May 14, 2014) (citing 29 C.F.R. § 776.20(b)-(c)). Therefore, her work for the factory is covered by FLSA.

Third, Tackie must allege that she did not receive minimum and overtime wages. To state a FLSA minimum wage claim, it is sufficient for a plaintiff to allege facts about her salary and working hours, such that a simple arithmetical calculation can be used to determine the amount owed per pay period. *Zhong*, 498 F. Supp. 2d at 629. Likewise, to state a FLSA overtime claim, a plaintiff must allege only that she worked compensable overtime in a workweek longer than forty hours, and that she was not properly compensated for that overtime. *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 199–201 (2d Cir. 2013) ("To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week.") (discussing *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). Tackie alleged that she worked a fairly regular schedule of forty hours per week, and she occasionally worked more than forty hours per week, yet she was paid only sporadically. Her handwritten records[3] indicate that she worked overtime hours in four specific weeks, but she was not paid overtime wages. These allegations are sufficient to state a claim for failure to pay minimum and overtime wages in violation of FLSA and the NYLL.

---

[3] The Court may consider these records because they were attached to the complaint. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Tackie further alleges that she did not receive written notice of her rate of pay, regular pay day, and other information as required by NYLL § 195(1)(a), nor did she receive any pay stubs, as required by NYLL § 195(3), for most weeks of her employment.

### C. Evidence in Support of Damages

Tackie seeks back pay and overtime wages under the NYLL, liquidated damages for wage and hour violations under both the NYLL and FLSA, prejudgment interest on her back pay, statutory damages for failure to give written wage notices and pay stubs under the NYLL, attorney's fees, and litigation costs.

#### 1. Back Pay

The NYLL requires that "manual workers" be paid weekly and not more than a week after the end of the week in which wages are earned. NYLL § 191(1)(a). The definition of "manual worker" includes laborers, which plainly includes seamstresses. *Id.* § 190(4). If a manual worker is not paid in accordance with this provision, she may recover the full amount of her unpaid wages—even if that amount would have been higher than the minimum wage under FLSA and the NYLL. *Yu Y. Ho*, 2014 WL 1998237 at *13 (citing NYLL § 198(1-a)). Furthermore, both federal and state law require that for each hour a covered employee works beyond forty hours in a work week, she must be paid at least one and one half times her regular wage. *Id.* (citing 29 U.S.C. § 207; 12 N.Y.C.R.R. 142–2.2).

Tackie has filed her handwritten records indicating that she worked 1,097.483 hours in Defendants' knitting factory, 23.534 of which were overtime hours. (Tackie Decl. Ex. A (handwritten notes), Dkt. No. 6-1; Dodson Decl. Ex. E (spreadsheet), Dkt. No. 20-1.) The few paystubs that she did receive indicate that she was hired to work for $20.00 an hour. (Tackie Decl. Ex. C (paystubs), Dkt. No. 6-3.) But Tackie's records indicate that she was paid only $180.00 in cash, $3,600.00 in checks, and $5,200.00 by direct deposit, for a total of $8,980.00. (Tackie Decl. Ex. B (typewritten record of payments), Dkt. No. 6-2.) She was therefore paid for

only 449.00 hours of work.  Tackie is owed $30.00 per hour for 23.534 hours of overtime ($706.02) and $20 per hour for 624.949 remaining hours of work ($12,498.98), for a total of $13,205.00 in back pay.

### 2.     FLSA Liquidated Damages

Employers who violate FLSA are liable for liquidated damages in an amount equal to the amount of minimum and overtime wages that the employer failed to pay on time.  29 U.S.C. § 216(b); *Gurung v. Malhotra*, 851 F.Supp.2d 583, 592 (S.D.N.Y. 2012).  The damages are calculated based on the federal minimum wage and overtime requirements, not wages to which an employee is entitled under state law.  *Gurung*, 851 F.Supp.2d at 592 (citing *Lanzetta v. Florio's Enterps., Inc.*, No. 08-CV-6181, 2011 WL 3209521, *1–*5 (S.D.N.Y. July 27, 2011) (Chin, J.) (reaching this conclusion after extensive discussion)).  Liquidated damages under FLSA are mandatory unless the employer demonstrates that it acted in good faith.  29 U.S.C. § 260; *Gurung*, 851 F.Supp.2d at 592.  Defendants that fail to respond to a motion for default judgment fail to carry this burden.  *Jaramillo v. Banana King Rest. Corp.*, No. 12-CV-5649, 2014 WL 2993450, *5 (E.D.N.Y. July 2, 2014) (quoting *Castellanos v. Deli Casagrande Corp.*, No. 11-CV-0245, 2013 WL 1207058, *6 (E.D.N.Y. Mar. 7, 2013)).

Tackie has demonstrated that she was supposed to be paid on a weekly basis, yet she was never paid on time.  (Tackie Decl. Exs. A–C.)  Defendants have not responded to this motion for default judgment.  Tackie is therefore entitled to FLSA liquidated damages in the amount of the federal minimum wage for each non-overtime hour she worked.[4]  *Gurung*, 851 F.Supp.2d at 592; *Lanzetta*, 2011 WL 3209521 at *3–*4.  She is also entitled to liquidated damages at the federal overtime rate for each overtime hour she worked, which is one and one half times the regular rate at which she was employed.  § 207(a)(1); *Lanzetta*, 2011 WL 3209521 at *3; *see Gurung*, 851

---

[4] Tackie's proposed order granting default judgment calculates FLSA liquidated damages at Tackie's regular rate of pay, which is incorrect.

F.Supp.2d at 592.  Tackie has demonstrated that she is entitled to liquidated damages at the federal minimum wage rate, or $7.25, for 1,074.129 non-overtime hours of work ($7,787.44), as well as liquidated damages at one and one half times her regular rate, or $30, for 23.534 hours of overtime work ($706.02), for a total of $8,493.46 in FLSA liquidated damages.

### 3. NYLL Liquidated Damages

The NYLL also has a liquidated damages provision.  NYLL § 198 (1-a).  Employers are liable for liquidated damages in the full amount of wages owed under the NYLL, unless they can demonstrate that they acted in good faith.  *Id.*  As is the case under FLSA, a defaulting defendant cannot carry this burden.  *Jaramillo*, 2014 WL 2993450 at *5 (citting *Castellanos*, 2013 WL 1207058 at *6).  Courts in the Second Circuit are divided over whether a plaintiff may recover liquidated damages under both FLSA and the NYLL, *see, e.g.*, *Lopez v. A. Napco & Son Inc.*, __ F. Supp. 2d __, 2014 WL 3893234, *1 (E.D.N.Y. Aug. 7, 2014), but allowing recovery under both statutes appears to be the majority approach.  *Jaramillo*, 2014 WL 2993450 at *6 (collecting cases).  This is because the Supreme Court has specified that liquidated damages under FLSA are compensatory, *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583 (1942), but the Second Circuit has held that liquidated damages under the NYLL are punitive, *Reilly v. Natwest Markets Grp., Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) (citing *Carter v. Frito-Lay, Inc.*, 74 A.D.2d 550 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 994 (1981)).  Therefore, the two types of liquidated damages are "not functional equivalents," and a plaintiff may recover both.  *Reilly*, 181 F.3d at 265 (holding the two types of damages are "not functional equivalents"); *Yu Yee Ho v. Sim Enterps., Inc.*, No. 11-CV-2855 (PKC), 2014 WL 1998237, *18 (S.D.N.Y. May 14, 2014) (collecting cases).

Tackie has demonstrated that she is entitled to $13,205.00 in back pay under the NYLL.  She is entitled to the same amount in NYLL liquidated damages.

4.	**Prejudgment Interest**

New York's statutory prejudgment interest is meant to compensate a plaintiff for lost use of money owed to her. *J. D'Addario & Co., Inc. v. Embassy Inds., Inc.*, 20 N.Y.3d 113, 117–18 (2012) (citing *NML Capital v. Republic of Argentina*, 17 N.Y.3d 250, 266 (2011)). FLSA liquidated damages are also a form of compensatory prejudgment interest. *Galeana v. Lemongrass on Broadway Corp.*, __ F. Supp. 2d __, 2014 WL 1364493, *11 (S.D.N.Y. Apr. 4, 2014) (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)). For that reason, courts do not award statutory prejudgment interest on any portion of their recovery for which liquidated damages were awarded under FLSA. *Yuquilema v. Manhattan's Hero Corp.*, No. 13-cv-0461 (WHP) (JLC), 2014 WL 4207106, *11 (S.D.N.Y. Aug. 26, 2014) (citing *Brock*, 840 F.2d at 1064). On the other hand, as discussed above, liquidated damages under the NYLL are punitive rather than compensatory. *Reilly*, 181 F.3d at 265 (citing *Carter*, 74 A.D.2d at 550). Prejudgment interest is not duplicative of liquidated damages under the NYLL, and therefore, plaintiffs are entitled to prejudgment interest on any compensatory damages awarded under the NYLL for which there is no corresponding award of liquidated damages under FLSA.[5] *Yuquilema*, 2014 WL 4207106 at *11 (citing *Reilly*, 181 F.3d at 265).

---

[5] Tackie's proposed order granting default judgment awards prejudgment interest on the full amount of her back pay. Her citations to opinions awarding prejudgment interest on the full amount of back pay are unpersuasive. Each of these opinions fails to acknowledge that awarding prejudgment interest on an amount for which the plaintiff receives FLSA liquidated damages is duplicative. *Kopec v. GMG Const.*, 2010 WL 3925210, *4 (E.D.N.Y. Sept. 10, 2010), *report and recommendation adopted*, 2010 WL 3909273 (E.D.N.Y. Sept. 30, 2010), *vacated on other grounds*, 2011 WL 2650597 (E.D.N.Y. July 6, 2011); *Yi T. Dong v. CCW Fashion Inc.*, Nos. 06-CV-4973, 07-CV-9741 (LAP)(DFE), 2009 WL 884680, *5 (S.D.N.Y. Feb. 19, 2009); *Heng Chan v. Sung Yue Tung Corp.*, No. 03-CV-6048 (GEL), 2007 WL 1373118, *9 (S.D.N.Y. May 8, 2007). Other courts have rejected these opinions, observing that "[t]his court and others have previously declined such overlapping awards." *Janus v. Regalis Const., Inc.*, 2012 WL 3878113, *9 (E.D.N.Y. July 23, 2012) (collecting cases); *e.g.*, *Liang Huo v. Go Sushi Go 9th Ave.*, No. 13-CV-6573 (KBF), 2014 WL 1413532, *6 (S.D.N.Y. Apr. 10, 2014); *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011).

New York's statutory prejudgment interest rate is nine percent. N.Y. C.P.L.R. § 5004. Where the plaintiff's damages were incurred at various times, interest may be computed from a "single reasonable intermediate date" between the dates on which the plaintiff started and stopped incurring damages. N.Y. C.P.L.R. § 5001(b). In wage and hour cases, courts often choose the midpoint of the plaintiff's employment within the limitations period. *See Yuquilema*, 2014 WL 4207106 at *12 (quoting *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012) (collecting cases)).

Tackie is entitled to $13,205.00 in back pay, $8,493.46 of which is the portion of her damages for which liquidated damages are awarded under FLSA. The balance, $4,711.54, is a portion of damages arising only under the NYLL. Tackie is entitled to statutory prejudgment interest on this amount from the midpoint of her employment, June 8, 2013.

### 5. Statutory Penalties

The NYLL requires employers to give each employee a notice of her rate of pay at the time of hiring. NYLL § 195(1)(a). A plaintiff may recover fifty dollars for each work week during which the employer continually failed to give this notice, not to exceed $2,500.00. NYLL § 198(1-b). The NYLL also requires employers to give each employee a pay stub listing various specific pieces of information with each paycheck. § 195(3). A plaintiff may recover one hundred dollars for each work week during which the employer failed to give this notice, not to exceed $2,500.00. § 198(1-d).

Tackie worked at the knitting factory for nearly fifty-four weeks. She never received a wage notice, and she received only five pay stubs. She is therefore entitled to $2,500 for more than fifty weeks during which her employer continually failed to give her a wage notice, plus $2,500 for more than twenty-five weeks during which her employer failed to give her a pay stub.

10

### 6. Attorney's Fees and Costs

Under both FLSA and the NYLL, a prevailing plaintiff may recover reasonable attorney's fees and costs. 29 U.S.C. § 216(b); NYLL § 198. District courts enjoy broad discretion when setting a fee award, but they must clearly and concisely state reasons supporting the award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014) ("We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's 'superior understanding of the litigation and . . . what essentially are factual matters.'") (quoting *Hensley*). Courts ordinarily award a lodestar fee, which is the product of the prevailing market rate for lawyers in the district and the number of hours a reasonable attorney would spend to litigate the case effectively. *Anthony v. Franklin First Financial, Ltd.*, 844 F. Supp. 2d 504, 507 (2d Cir. 2012) (holding "reasonable rate" is prevailing market rate in the district); *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011) (holding lodestar is "the product of a reasonable hourly rate and the reasonable number of hours required by the case"); *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (holding "reasonable number of hours" is the number a reasonable attorney would have spent). The plaintiff must produce "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Scott v. City of New York*, 626 F.3d 130, 133–34 (2d Cir. 2010) (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)).

Tackie's counsel, Penn Dodson, has requested an hourly rate of $400 for her work on this case. (Dodson Decl. ¶ 14, Dkt. No. 20.) In her sworn declaration, she states that she is a 2003 graduate of Hastings College of Law with over ten years of experience specializing in wage and hour litigation. (*Id.* ¶¶ 4–10.) Dodson has been honored by numerous professional associations and rated highly by her peers on professional websites. (*Id.* ¶¶ 6–8.) In February 2013 in the Eastern District of New York, Judge Weinstein awarded Dodson fees at a rate of $400 per hour

(*id.* ¶ 14), which is consistent with the prevailing rate for partners litigating wage and hour cases in the Southern and Eastern Districts. *See Yuquilema*, 2014 WL 4207106 at *14 (approving rate of $425 per hour for experienced partner moving for default judgment: "Courts in this District have determined in recent cases that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases."); *Jemine v. Dennis*, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012) ("[T]he prevailing hourly rates for partners in this district are between $300 and $400."). The rate requested by Dodson is reasonable.

Dodson has provided contemporaneous billing records for 25.29 hours of work. (Dodson Decl. Ex. B.) It is not clear whether all of this work was completed by Dodson; 0.4 hours of work on "Motion" were billed at a rate of $125 per hour, and 1 hour of work was billed at $60 per hour for "Admin." All remaining work was billed at $400 per hour; however, the entries for Dodson's work are not sufficiently detailed. She has billed for "Motion," "Court," "Email," "Admin," "Draft Document," "Analysis," "Pleading," and "Meeting." Many of these vague tasks would seem to overlap; at any rate, these billing categories are not "a detailed record of how plaintiffs' attorney[] spent [her] time." *Scott*, 626 F.3d at 132 (quoting *Carey*, 711 F.2d at 1147). Because of this deficiency in Dodson's records, and because these types of work appear to be somewhat duplicative, a 15% reduction in Dodson's requested fee is appropriate.

Dodson has also provided records of $1,110.95 in costs, including the cost of rush service of process on Defendants. (Dodson Decl. & Ex. A.) These costs are reasonable.

### D. Failure to Prosecute

Rule 4 of the Federal Rules of Civil Procedure requires a plaintiff to serve each defendant within 120 days of the date she files the complaint. If a plaintiff fails to do so, Rule 4 requires the Court, "on motion or on its own after notice to the plaintiff," to dismiss claims against the defendant who has not been served.

Tackie's time to serve Ricky Schiffer expired in July. She is hereby ordered to show cause why her claims against Schiffer should not be dismissed for failure to prosecute.

### III.   Conclusion

Tackie's motion for default judgment [Dkt. No. 19] is hereby GRANTED. The Clerk of Court is directed to enter default judgment against defendants Keff Enterprises LLC, Keff NYC, Inc., and Leonard Keff in the amount of:

> $13,205.00 in back pay;
> $8,493.46 in FLSA liquidated damages;
> $13,205.00 in NYLL liquidated damages;
> prejudgment interest on $4,711.54 at a rate of 9% from June 8, 2013;
> $5,000 in statutory penalties under the NYLL;
> $8,216.10 in attorney's fees; and
> $1,110.95 in costs.

Tackie shall show cause within thirty days why her claims against Schiffer should not be dismissed for failure to prosecute.

SO ORDERED.

Dated: New York, New York
       September 16, 2014

_____
J. PAUL OETKEN
United States District Judge